## FOWLER *v.* PREFERRED ACCIDENT INSURANCE COMPANY.

1. If in any event a valid contract of accident insurance can, in this State, be made in parol, such a contract does not result from oral conversations and negotiations between an applicant for insurance and an agent of an insurance company, whose conclusions and stipulations in the premises are finally reduced to writing and embraced in two instruments, the one an application for a policy of insurance signed by the applicant, and the other a receipt signed by the agent for a specified amount as "the first quarterly premium of" the policy to be issued.

2. Where from the terms of such application it is apparent that the agent in question has no authority to write for the company any binding contract of insurance, that no statements made by him to the applicant are to bind the company, that the application itself shall not be binding on the company until accepted by its secretary, and "that the policy shall not be in force until actually issued from" the company's office, a verbal assurance by the agent to the applicant that he is insured from the date of the application, and the giving of the

receipt, do not both together constitute a contract of insurance-
upon which an action can be maintained.

3. A policy of insurance bearing a given date, and purporting to·
   insure for the future only, cannot be made the basis of an
   action to recover for a loss occurring upon a prior date; and
   if for any reason such policy is subject to reformation as to·
   date, it can be reformed only in a court having the power to
   grant affirmative equitable relief in such matters.

Argued January 14,—Decided March 3, 1897.

Action on insurance policy. Before Judge Reid. City
court of Atlanta. May term, 1896.

*Goodwin & Westmoreland,* for plaintiff.

*Payne & Tye,* for defendant.

FISH, Justice.

Fowler brought suit, in the city court of Atlanta, against
the Preferred Accident Insurance Company of New York,
on a contract for accident insurance. After evidence for the·
plaintiff had been submitted, the court granted a nonsuit.
Plaintiff excepted, alleging that the court erred, because
under the law and evidence he was entitled to recover on
two grounds: (1) on an oral contract made with defendant's-
agents for immediate insurance, and (2) on a written policy·
which he alleged had been fraudulently dated so as to post-
date the accident.

The view that we take of this case renders it unnecessary
to decide whether or not a valid contract of accident insur--
ance can, in this State, be made in parol; for it is apparent
from the evidence in the record that no such parol contract
was ever consummated as claimed by the plaintiff in error.
All the oral conversations and negotiations between the·
plaintiff and the defendant's agents, in reference to accident
insurance which the plaintiff desired to procure in the de-
fendant company, resulted in the plaintiff filling out and'
signing an application for a policy for such insurance in the·
defendant company, and the agents of the defendant giving·
the plaintiff a receipt for a certain sum on the first quarterly
premium of the policy to be issued by the defendant, and'

were therefore merged in the said written instruments, by virtue of the plain and familiar rule that all oral negotiations, conversations and agreements between parties to a written contract, which either precede or accompany the execution of the instrument, are to be regarded as merged in or extinguished by it; and the writing is to be treated as the exclusive agreement by which the contracting parties are bound. Therefore whatever conclusions were reached or stipulations agreed upon by plaintiff and defendant's agents in the oral negotiations and conversations between them in reference to the insurance, must be considered as embraced in the written application and receipt. And if this be true, then there was no oral contract of accident insurance in this case.

2. After plaintiff had spent some time in conversation with defendant's soliciting agents and in discussing with them the respective merits of the various policies issued by the defendant, he decided upon the kind of policy he desired. The agents then handed him a printed application, containing a number of questions with blanks left for the answers. Plaintiff himself wrote out all the answers to such questions and signed the application. To one of the questions he answered that he was in the fire insurance business; and he testified at the trial that he was familiar with contracts and writings pertaining to insurance, and that he had carried accident insurance policies in other companies. This application contained the following: "I agree that any statement made by me to the solicitor of this application shall not bind the company unless written hereon, that this application shall not be binding upon the company until accepted by the secretary, and that the policy shall not be in force until actually issued from the office in New York. . . I hereby agree that this application and warranty, together with the premium paid by me, shall be the basis of the contract between the company and me; and if the policy shall be issued by said company upon this application, I agree to

accept such policy subject to all the conditions, provisions and classifications contained in such policy, or referred to therein, which I understand cannot be altered or changed by any agent or solicitor of the company, either before or after the issuing thereof." So that it appears that the plaintiff expressly agreed, in writing, that the basis of the contract between him and the company should be the application and the premium paid by him; that no statement made by him to the agents should bind the company, unless written upon the application; that the application itself should not be binding on the company until accepted by its secretary; and that the policy should not be in force until actually issued from the company's office. In the face of such plain and unambiguous language, contained in the written application signed by the plaintiff, as that quoted above, a mere verbal assurance by the agents of the company to the plaintiff to the effect that he is insured from the date of the application, and the giving by them to him of a receipt purporting to be for the first quarterly premium, do not constitute a contract of insurance upon which an action can be maintained.

3. It is evident from the terms of the policy issued to the plaintiff by the defendant, that the plaintiff cannot recover thereon without having it reformed, for it is dated August 30th, 1894, and insures the plaintiff for the term of three calendar months, beginning at twelve o'clock noon on the day of its date, *prior* to which time, to wit on August 13th, 1894, the plaintiff sustained alleged accidental injury for which he claims the damages sued for. The policy expressly stipulates that "the insurance contract will be in force only for the term mentioned in the policy." The defendant could not, therefore, be liable to the plaintiff, on this policy as it stands, for damages caused by an accident which happened before the policy by its terms became operative. The plaintiff, recognizing this to be true, contends that the policy does not contain the true contract made be-

tween him and the defendant. He says that the real contract was, that he was to be insured from August 7th, 1894, that the policy was to bear that date and insure him for three months from that time; and he alleges that the defendant fraudulently issued to him the policy dated August 30th, 1894, insuring him for three months from that date. And by his action he seeks, substantially, to reform the policy in accordance with his contention, and to recover for a breach of the reformed contract. The question is, can this be done in the city court of Atlanta? In *English* v. *Thorn*, 96 Ga. 557, this court decided that it is not within the power or jurisdiction of the city court of Atlanta to grant such affirmative equitable relief as the reformation, in vitally important particulars, of a written contract unambiguous in its terms, and which does not on its face suggest something was unintentionally omitted therefrom. The policy is certainly not ambiguous; there is nothing on its face suggesting that it bears the wrong date, or that the term for which it insured the plaintiff should be other than is therein expressed; and the changes which the plaintiff seeks to have made in it, viz: changing its date from August 30th, 1894, to August 7th, 1894, and providing that it shall insure him for three months, from August 7th, 1894, instead of from August 30th, 1894, go to the very vitals of the policy. According to the decision above cited, an action for such reformation cannot properly be brought in a court having no jurisdiction to grant affirmative equitable relief. The city court of Atlanta, being a court of law, may construe and enforce a written contract as it stands, but it cannot compel alteration to be made in it, since the power to reform such contracts is exclusively within the jurisdiction of courts of equity, and, under the constitution of Georgia, the superior courts have exclusive jurisdiction in equity cases. We are, therefore, of opinion that the judge below did not err in granting a nonsuit.

*Judgment affirmed. All the Justices concurring.*