## 73302. TRAVILLIAN v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY.
### (355 SE2d 677)

BANKE, Presiding Judge.

On June 30, 1984, appellant Travillian was operating his automobile, which was insured under an automobile insurance policy issued by appellee Georgia Farm Bureau Mutual Insurance Company (Georgia Farm), when he was struck from the rear by another vehicle. The appellant reported the accident to Georgia Farm's agent by telephone on the next business day and orally asserted a claim for collision (i.e., property damage) coverage against the insurance company. The appellant maintains that he was advised by the appellee's agent at that time that, since the other driver appeared to be at fault, he (the appellant) would be required to pursue his claim against the other driver's insurance carrier. In subsequent conversations with Georgia Farm's agent, the appellant demanded that Georgia Farm repair or replace his vehicle, which had been evaluated as a total loss. The appellant contends that he was again advised that Georgia Farm would not pay the claim because it did not "get involved" when the other driver was at fault. The record is in fact devoid of evidence that Geor-

gia Farm at any time offered to pay any portion of the appellant's claim.

The appellant retained counsel and, approximately three and one-half months after reporting the claim to Georgia Farm and demanding payment, ultimately reached a settlement with the other driver's insurance carrier in the amount of $2,500, the agreed upon market value of the automobile. However, the appellant realized only $1,250 from this settlement, the remaining $1,250 being paid to his attorney as a 50 percent contingent fee.

The appellant subsequently brought this suit against Georgia Farm to recover the market value of his automobile less the deductible under the policy, as well as a 25 percent bad-faith penalty and attorney fees pursuant to OCGA § 33-4-6. Georgia Farm sought summary judgment contending that the appellant had compromised its right of subrogation as set forth in the policy by settling his claim with the other driver's carrier, that he had further violated the policy provisions by failing to submit a sworn proof-of-loss statement, and that he had already been compensated in full for his loss. The trial court granted the motion, based on a determination that the appellant had been compensated in full for his damages by the other driver's carrier and had forfeited any right of recovery he might otherwise have had by his failure to submit a sworn proof of loss, as required by the policy. The court further concluded as a matter of law that there had been no bad faith on the part of the insurer. *Held*:

1. We agree with the appellant's contention that an issue of material fact existed as to whether Georgia Farm's refusal to consider his claim resulted in a waiver of the policy requirements concerning proof of loss.

In *Mattison v. Travelers Indem. Co.*, 157 Ga. App. 372 (2) (277 SE2d 746) (1981), this court held that it makes no difference "who gave notice of the lawsuit and claim so long as notice is given in a reasonable and timely manner," with the result that the carrier has actual knowledge of the pendency of a claim. In the present case, there is ample evidence to establish that the insured repeatedly notified the appellee's agent of the existence of his claim and demanded compensation for his property loss, only to be told, in effect, that he had no coverage under the circumstances. It may be inferred from this evidence "that the defendant was fully aware of the facts and circumstances surrounding the [accident]." *Mattison*, supra at 375. "[T]here being some evidence that the insurer had refused to consider [the appellant] as an insured, an issue of fact remains as to whether same constituted a waiver of the policy requirements as to notice [and] proof of loss . . ." Id. at 376.

2. We also reject the appellee's argument that, as a matter of law, the appellant violated the subrogation provision of the policy when he

elected to pursue his tort claim against Liberty Mutual. Clearly, a question of fact also exists as to whether the appellee, by instructing the appellant to take this very course of action, also waived any rights it might otherwise have had under this provision. Accordingly, the trial court erred in concluding that the appellee's failure to comply with the policy requirements in this respect precluded any recovery by him in the present action.

3. In his complaint, the appellant sought to recover for the loss of his automobile as well as to recover a bad-faith penalty and attorney fees based on the appellee's refusal to honor the claim. The trial court determined that, having already settled with the tortfeasor's insurance carrier for the loss of his car, the appellant was barred from asserting the same cause of action against his own carrier. We agree. " 'No matter what right the party wronged may have of electing between remedies or of pursuing different defendants for the same cause of action, when he once obtains full satisfaction from one source, his cause of action ends, and he can assert it no further. If the plaintiff in a suit brought upon a given cause of action accepts a sum of money in full settlement thereof, he cannot thereafter set up the same cause of action against another whom he had the election of suing in the first instance.' [Cits.]" *Nannis Terpening & Assoc. v. Mark Smith Constr. Co.*, 171 Ga. App. 111, 114 (318 SE2d 89) (1984). However, while we affirm the trial court's grant of summary judgment to the appellee with respect to the appellant's claim to recover for the damage to his vehicle, we note that the evidence of record does raise material factual issues with respect to whether the appellee may be held liable in contract for the $1,250 in attorney fees which the appellant contends he was forced to expend as a direct and natural consequence of the appellee's refusal to pay the claim. See generally OCGA §§ 13-6-1; 13-6-2; *Crawford & Assoc. v. Groves-Keen, Inc.*, 127 Ga. App. 646, 650 (194 SE2d 499) (1972).

4. Material issues of fact also exist with respect to the appellant's liability for a bad-faith penalty and attorney fees pursuant to OCGA § 33-4-6. That code section provides: "In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 25 percent of the liability of the insurer for the loss and all reasonable attorney's fees for the prosecution of the action against the insurer."

The trial court concluded that the appellant had no claim under this provision due to his failure to submit a sworn proof of loss as required by the policy. However, as held in Division 1 of this opinion, supra, a jury might reasonably conclude that the appellee waived the

proof of loss requirement by instructing the appellant that it did not intend to pay the claim in any event.

While an insurance carrier has a right to require its insured to abide by the terms of the contract "that right is limited by the reasonableness of its exercise under the circumstances when it delays payment." *Falagian v. Leader Nat. Ins. Co.*, 167 Ga. App. 800, 801 (307 SE2d 698) (1983). The question of reasonableness is generally for the jury. Id. Since the evidence of record in this case does not establish as a matter of law that the appellee acted reasonably in refusing to honor the appellant's claim, the trial court erred in granting summary judgment on the claim for a bad-faith penalty and attorney fees.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Carley, Sognier, Pope, and Benham, JJ., concur. Birdsong, C. J., and Deen, P. J., dissent. Beasley, J., concurs in the judgment only of the dissent.*

BIRDSONG, Chief Judge, dissenting.

1. I am compelled to enter my disagreement with the reasoning and conclusions reached by the majority in Divisions 2, 3 and 4 of this opinion. The substance of those divisions is that Travillian did not receive a full compensation for his property loss and that an issue of fact remains as to whether the appellee Georgia Farm Bureau acted in an arbitrary manner in denying coverage for Travillian's property loss. While there may be arguable issues of fact as discussed by the majority, it is my belief that such potential issues of fact are not material nor are they the dispositive issues for decision in this case.

It is not in question that Travillian suffered a property loss when his automobile was struck from behind by another. Travillian sought from his insurer (Georgia Farm Bureau) reimbursement for that property loss. When Georgia Farm Bureau adamantly refused to honor such coverage, Travillian abandoned the demand against his insurer for his collision loss and sought and recovered his property loss from the tortfeasor. Likewise, it is not in dispute that the amount of property loss suffered by Travillian was $2,500. Finally it is undisputed that the tortfeasor paid from his coffers the amount of the damage, i.e., $2,500. These facts seem clear and undisputed.

2. Part III of the contract of insurance between Georgia Farm Bureau and Travillian required Georgia Farm Bureau to pay for loss caused by collision to the owned automobile for the amount of the loss in excess of the deductible amount. There was no limitation upon that coverage; thus, proof of collision loss filed with the insurer vested a right of coverage in Travillian. It is manifest that Travillian suffered a breach of the contract by Georgia Farm Bureau when the insurer declined to cover the collision loss.

It is equally clear that in addition to the contract action against

his insurer, Travillian had a cause of tort action for this same property loss against the tortfeasor. Pretermitting any right of action that Travillian potentially may have had against the tortfeasor for economic damages or injuries in addition to the property loss, it seems clear that the only recovery obtained (i.e., the property loss of $2,500) was the result of Travillian's election of one of his two remedies, the self-same right of recovery but through the alternative avenue against the tortfeasor.

Travillian's obvious right of recovery against Georgia Farm Bureau contractually was based upon the "collision" provisions of his contract with Georgia Farm Bureau. Thus provisions of "no-fault" law concerning the right of subrogation did not come into play. Subrogation rights inuring to Georgia Farm Bureau as a matter of statutory right arise out of the law governing payment of collision coverage. It is clear that had Travillian elected his remedy through a complaint against Georgia Farm Bureau and the insurer had paid Travillian under the terms of the collision coverage, the insurer would have been subrogated fully to the right to seek recovery of the $2,500 from the tortfeasor. *Carter v. Banks*, 254 Ga. 550, 552 (1) (330 SE2d 866). Having elected however to recover from the tortfeasor, if Travillian were to be successful in this suit against Georgia Farm Bureau, he would be doubly paid for his single loss (a fact he candidly admitted he sought and to which he believed himself entitled) for he has recovered the entirety of the value of the auto from the tortfeasor. The completeness of that recovery defeated any right by a subrogated insurer to effect a recovery of its payment for the collision loss. We cannot apply the collateral source rule even though the right of recovery is based upon different avenues of recovery, i.e., contract and tort for there still remains only one loss and the collateral source rule has no application where the right of subrogation exists. See *McGlohon v. Ogden*, 251 Ga. 625, 628 (1) (308 SE2d 541).

OCGA § 9-2-5, as declared by the Legislature, is wholly consistent with "prevailing jurisprudential philosophy that [a] party is not entitled to prosecute a suit for the same cause of action in different Courts. . . . [The statute] simply provides the mechanism by which the one viable action is to be determined. If the actions are commenced at different times, the plaintiff has no election, must proceed with the initially filed action, and such former suit shall be a good defense to the latter. . . . It is to be noted that the statute allows the plaintiff to elect the case which he will prosecute . . . and not the one which he will first prosecute." (Emphasis deleted.) *Clark v. Weaver*, 159 Ga. App. 594, 595 (284 SE2d 95). Travillian, having elected to seek and obtain his recovery from the tortfeasor, is barred from seeking an identical recovery for the same loss from his insurer, who, incidentally, he has barred from the statutorily granted right of subroga-

tion.

I also disagree with the argument that Travillian has not recovered fully his loss of $2,500 because he was forced to pay half that recovery to his attorney, apparently based upon a contingency fee contract. As between Travillian and the tortfeasor, the loss has been made whole for the only amount sought was $2,500 and $2,500 was recovered. Travillian's payment to his attorney from his recovery was based upon an agreement between a client and his attorney and satisfaction had to come from Travillian but from a source of assets selected by Travillian with only the amount of the payment being affected by the amount of the recovery. If attorney fees inherently are a part of a recovery from a tortfeasor as opposed to a punitive addition to a recovery, then every recovery must be adjusted to include injury as well as attorney fees. I do not understand the law to contemplate such to be a part of ordinary damages.

3. As I view the applicable law, I find no error on the part of the trial court in its grant of summary judgment to Georgia Farm Bureau in relation to the claim for the basic $2,500 satisfied by the tortfeasor. Likewise, I can find no error in the implied denial of a right to recover the 25% penalty and attorney fees authorized upon a proper factual finding under the provisions of OCGA § 33-4-6. While it is clear that liability existed under the contractual provisions of Georgia Farm Bureau's collision coverage of Travillian, that liability could be waived by Travillian either by not conforming to the requirements of the contract (i.e., by not filing a claim, by not giving reasonable notice, etc.) or, as in this case, electing not to pursue his remedy against his insurer but electing to seek satisfaction against the tortfeasor. The provisions of OCGA § 33-4-6 assume several conditions: (1) coverage; (2) a demand; (3) a bad faith refusal to honor a good claim for more than 60 days; (4) followed by a right of recovery (i.e., by a lawsuit) of the amount of coverage, a 25% penalty and attorney fees. It is clear that Travillian had collision coverage, made his demand and I have indicated my belief that the denial of coverage was improper. Thus of the four prerequisites to bring OCGA § 33-4-6 into play, Travillian had met three. His right to pursue penalties and attorney fees was established after the passage of 60 days. The liability of the insurer for collision, penalties, and attorney fees continued for approximately 40 days. But the right to pursue penalties and attorney fees based upon bad faith is appendant to liability for coverage. When Travillian voluntarily abandoned his right to pursue his claim against Georgia Farm Bureau and elected to seek to be made whole by the tortfeasor, he relinquished or waived the underlying liability for collision coverage. The waiver of the liability likewise waived any right to recover the attorney fees and penalties which could only arise where the company has wrongfully forced the insured to pursue recovery by way of

litigation. Accordingly, I would affirm the judgment of the trial court.

I respectfully dissent. I am authorized to state that Presiding Judge Deen joins in this dissent and Judge Beasley joins in the judgment only of this dissent.

DECIDED MARCH 6, 1987 —
REHEARING DENIED MARCH 19, 1987 —

*James W. Lewis*, for appellant.
*Earl W. Gunn, Joseph C. Parker*, for appellee.